J-A17036-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EDWARD BARNABEI | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONNA DEVITIS | |
| Appellant | No. 2603 EDA 2013 |

Appeal from the Order Entered July 30, 2013
In the Court of Common Pleas of Montgomery County
Civil Division at No: 2003-06071

BEFORE: GANTMAN, P.J., PANELLA, and STABILE, JJ.

MEMORANDUM BY STABILE, J.: **FILED OCTOBER 20, 2014**

Appellant, Donna DeVitis, appeals *pro se* from the trial court's July 30, 2013 support order. This Court has reviewed this child support action on several occasions. Most recently, on June 29, 2011, this Court reversed the trial court's support order because, among other things, it assigned Appellant zero earning capacity. On remand, the trial court conducted a six-day hearing and thereafter issued the order on appeal. We now affirm.

Appellant includes ten assertions of trial court error in her appellate brief. Appellant's *Pro Se* Brief at 6-8. We have reviewed the parties' briefs, the pertinent portions of the record, the applicable law, and the trial court opinion.[1] We conclude the trial court's opinion aptly addresses Appellant's

---

[1] Our standard of review is as follows:
*(Footnote Continued Next Page)*

assertions of error. In particular, we believe the record supports the trial court's conclusion that Appellees did not change jobs with the goal of seeking to avoid his child support obligation. Trial Court Opinion, 11/8/13, at 16. We also agree that, under circumstances here present, the trial court was permitted by statute to deduct Appellee's health insurance premiums from his gross income. *See* Pa.R.C.P. 1910.16-6(b)(4). Trial Court Opinion, 11/18/13, at 19. We find no reversible error in the trial court's decision not to assign Appellant an earning capacity. *Id.* at 20. Appellant's Brief in support of her ten assertions of error is repetitive and difficult to follow. Nonetheless, we believe the trial court properly discerned Appellant's preserved assertions of error and denied relief. We therefor affirm the July 30, 2013 order based on the trial court's well-reasoned opinion.

Order affirmed.

*(Footnote Continued)* ─────────────

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Krebs v. Krebs*, 944 A.2d 768, 772 (Pa. Super. 2008).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/20/2014



2003-06071-0337     FilingID:    9519434
11/12/2013 10:20:03 AM
Opinion
Receipt # Z1969113   Fee  $0.00
Mark Levy - MontCo Prothonotary

# IN THE COURT OF COMMON PLEAS MONTGOMERY COUNTY, PENNSYLVANIA
## FAMILY DIVISION

EDWARD BARNABEI            :
           : **Superior Court No.:**
           : **2603 EDA 2013**

    v.                 :
           : **Common Pleas Court No.:**
           : **2003-06071**

DONNA DEVITIS            :

## OPINION

**Page, J.**                                                    **November 8 , 2013**

## INTRODUCTION

Appellant, Donna DeVitis ("Mother") appeals from this Court's support order dated July 30, 2013. The support order was issued in response to a remand from the Superior Court as a result of Father's appeal on certain support issues. This Court held a six-day protracted hearing beginning on March 4, 2013. In addition to support petitions, Mother filed additional contempt petitions based on her allegations that Father was in contempt of the parties' October 24, 2006 Order of Support for failure to pay private home health care costs. Mother's contempt petitions were denied by this Court since there was no specific and definite language in said order which required Father to pay private home health care costs.

Further, this Court issued a seven-part support order for the periods of February 23, 2006 through December 31, 2006, January 1, 2007 through May 1, 2007, May 2, 2007 through December 31, 2007, January 1, 2008 through December 31, 2008, January 1, 2009 through December 31, 2009, January 1, 2010 through February 15, 2011, February 16, 2011 and forward which included a ten percent upward deviation to Mother for medically necessary

1

supplies for the parties' child J███ D████ born ████████████2000, who suffers from developmental delays and has been diagnosed on the autism spectrum.

## FACTS AND PROCEDURAL HISTORY

On April 29, 2010, Father filed a timely appeal of the Court's child support order dated March 30, 2010. The Superior Court issued an order dated June 29, 2011, in response to Father's issues on appeal. In its order, the Superior Court held that the case should be remanded back to the trial court since the trial court abused its discretion in assigning Mother a zero earning capacity, allocating of additional expenses including tires, cell phones, spare tires, and insurance for the home health aides, and allocating of YMCA expenses for periods in which they were not incurred. (Appeal from the Order entered March 31, 2010 in the Court of Common Pleas of Montgomery County Civil Division, 6/29/11, p. 10, 14, 16, 21). However, the Superior Court affirmed the allocation of the dependency tax exemption to Father pursuant to Pa.R.C.P. 1910.16-2(f), deduction of health insurance payments from Father's income pursuant to Pa.R.C.P. 1910.16-6(b)(4), and the upward ten percent deviation from the Guidelines pursuant to Pa.R.C.P. 1910.16-5. *Id.* at 10, 13

On August 28, 2013, Mother filed a timely appeal to this Court's July 30, 2013 Order and a concise statement of errors complained of on appeal on September 25, 2013.

## ISSUES

Mother raises the following issues on appeal which have been summarized for the sake of brevity since many of the issues are outside of the scope of the protracted hearing held before this Court on March 4, 2013 and past the allotted 30 day appeal period pursuant to Pa.R.A.P. 903:

2

1. Whether the Trial Court Judges and any\all court officers erred, committed abuse of discretion and/or, abuses of power and/or showed ill-will towards Child and Defendant by depriving them of access to the courts, timely access to impartial and fair hearings, their right to impartial Judges, and just, fair, and timely outcomes in both procedures and in the substance of the law as an element of fundamental fairness.

2. From 2006 thru 2013 the Court failed to value the Child as an individual with a disability and failed to act timely to address his needs.

3. Judge Garrett Page in his July 30, 2013 Support Order makes determinations about Mother's potential income and how the court would rule on Childcare [sic] and medical care for the Child based on a predetermined set of facts that may or may not be accurate. Therefore the statement denies defendants of access of to [sic] impartial and fair hearings by an impartial judge by predetermining how the court should rule at future date [sic] and why and by erroneously influencing future hearing officers/judges to potentially dismiss or deny defendants pleadings.

4. Judge Garrett Page abdicated his role as gatekeeper and permitted irrelevant and prejudicial information regarding the Child's, mothers [sic] and mother's family members to be released through unfair surprise to Plaintiff and his Council [sic] and admitted into evidence by Plaintiff after the start of trial sabotaging defendant's case, overwhelming her as a pro se litigant, witness and parent and creating obvious prejudice that could not be overcome by any means.

5. Judge Garrett Page and Judge Author [sic] Tilson abdicated their roles as Gatekeeper and did allow Council [sic] for Plaintiff who is an Officer of the Court to testify during the course of these hearings to the Child's diagnosis and equipment. Said council [sic]

3

was not called as witness [sic] by either party. Defendant was denied the right to examine, cross-examine and impeach the testimony of Plaintiff's counsel. Council's [sic] testimony was prejudicial against defendants and was used to deny services and accommodations to the defendants.

6. Judge Author [sic] Tilson failed to hold hearings for Special Relief to address the child's need for medical care and/or child care and did enter a final order in support on March 30, 2010 despite the fact this [sic] pleading as well as other [sic] of Defendants [sic] pleadings and discovery issues remained open/outstanding before the trail [sic] court.

7. Judge Author [sic] Tilson allowed appeal to be filed in Superior Court of PA during 2010/2011 while defendant's petitions remained outstanding on the trial court level.

8. Judge Patricia Coonahan sat on the bench in this matter from 2010 thru 2011 in violation of the Judicial Code of Conduct and Ethics as well as statutory and other laws expressly forbidding her to do so, and in violation of mother [sic] constitutional rights, due to her involvement as a Judge in a criminal law suit brought against defendant. During the time that Judge Coonahan was Judge in this immediate matter, defendant filed civil actions against the government in local, State and Federal Court's [sic] alleging harassment and retaliation that arose from the criminal suit. Plaintiff was a witness for the government in those civil hearing's [sic]. Judge Coonahan's presence on this case had a chilling effect on defendants and caused defendant to become fearful, anxious, demoralized and discouraged at all times in her dealings with the Montgomery County Domestic Relations Office and the Montgomery County Common Pleas court and its officers because her [sic] perception of the Court was that

4

they were partial to Plaintiff and his council [sic] and cared less about fairness and the welfare of the Child.

9. Domestic Relations Hearing Officer Mindy Harris held and [sic] improper hearing that resulted in the January 6, 2011 Support Recommendation which was based on a letter in which Plaintiff's council [sic] Deborah Zitoemr [sic] argued the merits of her the [sic] case prior to the hearing. Defendant did not receive a copy of this letter until a week after it was sent and by that time Master Harris had already made decisions that were prejudice [sic] against defendants based on the information disclosed in Deborah Zitomer's letter.

10. The Montgomery County Prothonotary refused to allow mother to file her pleadings on-line until May 2013 and did refuse on March 4, 2013 to allow mother to file her Pre-trail [sic] objections in a timely manner through enforcing a policy that demands Pro Se litigants go upstairs to Court Administration to have their paperwork checked and approved first. Mother did not have time on that morning to do that as this was a last minute filing in response to pre-trial issues. She explained this to the Clerk who twice denied her the right to file her paperwork that morning and as a result denied and interfered with defendants the right to protect herself and make and preserve objections.

11. Whether the trial court erred, committed abuses of discretion and bad-faith by failing to hold hearings on to [sic] and/or to Grant [sic] Defendants [sic] March 11, 2013 Motion to Strike Plainitffs [sic] Protection Order in Discovery and to Compel Plaintiff to Produce Documents and Answers and in doing so allowed Plaintiff and/or his

council [sic] Deborah Zitomer, Esquire to sabotage and compromise defendants case by allowing them to:

a. Within her capacity as Plaintiffs [sic] council [sic] in this matter, in her capacity as Plaintiff's tax attorney, and in her capacity as an Officer of the Court to utilize her position as both shield and sword to deny discovery to defendants on the grounds of 'privilege' to gain unfair advantage for her client.

b. Fail to disclose relevant and necessary discovery to defendant regarding all of plaintiff's income available for Support of the Child.

c. Fail to disclose in advance of hearings evidence, documents and reports etc. and the names of witnesses expert [sic] and otherwise.

d. Fail to allow defendant to properly prepare investigate [sic], question, examine, and to exclude expert witnesses through proper de vior [sic] process.

e. Fail to properly lay a foundation and offer a summary as to why exhibits and witnesses were not subject to discovery.

f. Deny defendant the ability and time to prepare and bring her case to trial her case [sic] for trial.

g. Deny or interfere with defendants the right [sic] to file objections to and properly lay a foundation to object witnesses [sic] and exhibits prior to and during the hearings.

h. Deny to defendant the ability to properly utilize exhibits to defend and make calmis [sic].

6

i. Deny and/or interfere with defendant's right and ability to question witnesses, cross-examine witnesses, impeach witnesses, and provide rebuttal witnesses.

j. Interfere with defendants [sic] right to and ability to make claims against and impeach Plaintiff.

k. Deny to defendants the ability to prove the merits of case [sic] to the Court.

l. And address issues of prejudice during the hearings in both procedures and in the substance of the law as an element of fundamental fairness.

12. Whether the trial court erred and committed abuses of discretion and showed bad-faith by failing to hold hearings on to [sic] and grant Defendant's March 11, 2013 Motion to Strike Plaintiffs Protection Order in Discovery and to Compel Plaintiff to Produce Documents and Answers and in doing so denied to defendant in both procedures and in the substance of the law as an element of fundamental fairness access [sic] to hearings:

a. To have her grievances heard with regards to the impact of the issues of prejudice was having [sic] on discovery and on defendants [sic] ability to bring her case to trial and to prove the merits of her case.

b. To address Attorney Zitomer's conflict of interest.

c. To resolve discovery disputes.

d. And to Strike the Plaintiffs Protection Order and compel him to produce documents and answers.

7

13. Whether the trial court erred and committed abuses of discretion and showed bad-faith towards defendants and did violate there [sic] protected civil rights by entering the March 2013 Discovery Orders granting to Plaintiffs [sic] council [sic] Deborah Zitomer, Esquire the release of and unrestricted access to Childs [sic] and Mothers [sic] protected, confidential and/or privileged medical and psychological information and records:

    a. Against mothers objections.

    b. In light of evidence showing the [sic] Attorney Zitomer had mislead [sic] the Trial court [sic] Judge, Judge Hass [sic], during a discovery hearing on mother's Motion for Protection Order as to whether the motion required a hearing and should be granted on the grounds by stating that she [Attorney Zitomer] had not made any requests for such documents when in fact she had.

    c. In light of evidence showing that attorney Zitomer has mislead [sic] the trial court as to where she was going with discovery when she failed to file documents requests [sic] and to Prevent [sic] defendants Protection Order form [sic] being granted.

    d. When Plaintiff's counsel having the prior years and months to properly request this information and allow Defendants to properly object to her requests, attorney had failed to follow the rules of civil procedure and Rues [sic] of discovery to obtain such prior to the hearings.

    e. Knowing that granting the release of this information would overwhelm sabotage [sic] and compromise defendants' [sic] case.

8

14. Whether the trial court's [sic] erred and committed abuses of discretion with by [sic] entering Support order that were [sic] unlawful, arbitrary, discriminatory and outside the scope of what the law could allow, thus depriving defendants of equal, just and fair protections of their property and persons under the law in both procedures and in the substance of the law as an element of fundamental fairness:

    a. By failing to properly consider the impact disability was having on the Child and to what was necessary and timely to help him.

    b. By failing to properly consider the impact the Child's [sic] disabilities had on mother's ability to work and her earning capacity.

    c. By failing to act in the best interests of the child by directing the parties to pay proportionate to their income for the proper level and continuity of services and care (throughout a seven year period) that was medically/therapeutically necessary and reasonable for the child to have while mother was working/and or pursing [sic] education which failure of the court was detrimental to the child, the custodial household and the taxpayers causing more restrictive, traumatic and costly level off [sic] care to address the impact on the Child in the form of regression.

    d. By failing to properly take into account and credit mother for her significant contributions of time and money given towards the education and extraordinary care of the Child (the Child is educated from his home).

    e. By putting mother in with an earning capacity there by [sic] decreasing fathers support obligation to the Child when the court knew mother was

9

not working, when the court knew it had for years denied her Childcare [sic] so he could be reasonable be employed, and with respect to the Support order of March 30, 2010 directed mother by Order to *stay home and care for the child*. The court failed to offer to mother any just compensation for her labor.

f. By failing to make Plaintiff responsible to reimburse mother and providers of care for childcare and medical expenses when she was working and/or at school.

g. By failing failed [sic] to properly consider and hold father accountable for the negative impact, and in the alternative rewarding fathers [sic] negligent conduct, by exempting him from paying any portion of unreimbursed medically reasonable and necessary services to the child that could have been deferred and decreased had father exhausted all remedies available for payment of such with the primary insurance policy carrier BCBS. (as demanded mother do-and she did-with secondary insurance carrier Keystone Mercy)

h. By failing to address and remedy the status of the Personal Representative with the parties on the Primary insurance carrier so the Child could receive full benefit of having this insurance policy.

i. By exempting father from any responsibility to have to pay his proportionate share for Childcare [sic] or Specialized care expenses while mother was at work and/or school while despite the fact the same orders demanded mother work and pay expenses for the Child.

10

j. By allowing Father a significant decrease in his support obligation without first applying the proper standard of scrutiny of evidence, without first holding proper hearings to determine if the decrease was warranted and doing so without any consideration to the impact on the Childs extraordinary needs and the impact on the custodial households finances.

k. By enforcing a Protection Order to Plaintiff that was overly broad and outside the scope of what the law could grant resulting in denial to defendant relevant and necessary information needed to support the merits of her case and which would have to allowed [sic] the court to complete a make a [sic] reasonable, responsible and truthful, investigation into all of Plaintiffs [sic] income and assets available for Child support and to support same to ensure that the best interests of Child [sic] and fairness to parties.

15. Whether the Trial Court erred, committed abuse of discretion and showed ill-will towards Child by denying to him the proper level and continuation of care by directing Edward Barnabei ("Father") to contribute nothing towards the cost of the Child's respite care, education and payment for Home Health Aide Services.

16. Whether the Trial Court erred in granting to Plaintiff the sole right to claim the Child as a dependant [sic] for tax purposes.

17. Whether the Trial [sic] erred in allowing Father to deduct the costs of his health insurance from his net income when he had already deducted it as an expense on his

tax returns and had not allowed defendant to access to [sic] the policy as the personnel [sic] representative so that the insurance could be fully utilized to benefit the Child.

18. Whether the trial court committed an abuse of discretion in allowing father to modify and decrease his support obligation when he voluntarily left a hiring [sic] paying job to take a lower paying one.

19. Whether the Trial [sic] erred and committed an abuse of discretion, in not finding Father in contempt when he failed to follow court orders.

20. Whether the trial court erred and committed an abuse of discretion and showed ill-will towards defendants by improperly restricting defendants [sic] right to Examination [sic] of, cross-examine of, and impeachment of Witnesses [sic].

21. Whether the trial court erred and committed an abuse of discretion and showed ill-will towards defendants by restricting defendant's right to testify as a witness and to produce evidence and exhibits.

22. Whether the trial court erred and committed an abuse of discretion by failing to exclude prejudicial testimony and exhibits.

23. Whether the trial [sic] erred by failing to allow for additional days of hearings for testimony and exhibits.

24. Whether the trial court erred by making improper comments about god [sic] in violation of church and state.

## STANDARD OF REVIEW

An appellate court may reverse a child support order only if the court finds that the order cannot be sustained on any valid ground, or the lower court has committed an abuse of discretion. *Maue v. Gilbert*, 839 A.2d 430, 432 (Pa. Super. 2003).

12

An abuse of discretion will occur where (1) insufficient evidence exists to sustain the child support award, (2) the trial court, in reaching a conclusion, overrides or misapplies existing law, (3) the judgment exercised is manifestly unreasonable or, (4) the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record. *Kraisinger v. Kraisinger*, 928 A.2d 333, 341-42 (Pa. Super. 2007).

## DISCUSSION

This Court will narrow down Mother's issues on appeal since the following issues are outside the scope of this Court's July 30, 2013 Order, not relevant to the protracted hearing held before this Court on March 4, 2013 or the contents of this Court's support order, and/or minor issues.

First, Mother's issue on appeal alleging that Judge Tilson allowed Father's counsel, Deborah Zitomer, Esquire, to testify about the child's diagnosis and equipment during the protracted hearing is outside of the scope of the proceedings before this Court since Mother never timely raised this issue on appeal after her hearing before Judge Tilson. Any issue not properly and timely appealed within 30 days is deemed waived. *Pa.R.A.P. 903* (2013).

Similarly, Mother's additional issues on appeal were not timely filed and are outside of the scope of the instant appeal pursuant to Pa.R.A.P. 903: 1) Mother's argument alleging that Judge Tilson failed to hold hearings for Special Relief to address the child's need for medical care and/or child care, 2) Mother's argument alleging that Judge Tilson allowed appeal to be filed in the Superior Court while her issues still remained outstanding, 3) Mother's argument alleging that Judge Coonahan failed to recuse herself from the case, 4) Mother's argument alleging that the Montgomery County Prothonotary refused to allow her to

13

file her pleadings online, 5) Mother's argument alleging that the trial court judges and any/all court officers erred, committed abuses of discretion, abuses of power, or ill-will towards the child and Mother by depriving them access to the courts, timely access to impartial and fair hearings, and 6) this Court's failure to hold hearings on and grant Mother's Motion to Strike Plaintiff's Protection Order in Discovery and to Compel Plaintiff to Produce Documents and Answers since said Motion was untimely filed on the last day of the parties' protracted hearing and based on a protection order dated October 5, 2006 which was never appealed.

Second, Mother's argument alleging that Domestic Relations Hearing Officer Mindy Harris held an improper hearing that resulted in the January 6, 2011 Support Recommendation is improper since the support hearing before Judge Page on March 6, 2013 was a de novo hearing. Mother had an absolute right to a de novo hearing, and during this type of hearing, this Court had discretion to consider all the facts in determining whether to accept, reject, or modify the master's recommendation. *See Warner v. Pollock*, 644 A.2d 747 (Pa.Super 1994); *D'Arciprete v. D'Arciprete*, 470 A.2d 995 (Pa. Super. 1984).

Third, Mother also argues on appeal that this Court failed to allow for additional days of hearings for testimony and exhibits. However, this Court scheduled the parties' hearing for a duration of six days. Mother was a pro se litigant and did not understand the complexities of courtroom procedure and the Rules of Evidence which prolonged the hearing since this Court had to narrow down Mother's issues to the most applicable ones to the issues of support and contempt. Further, Mother was argumentative which also distracted time from the hearing. Overall, six days was more than sufficient for both parties to present their evidence.

Fourth, Mother's argument that this Court erred by failing to find Father in contempt of the October 24, 2006 Support Order is also without merit. To be in contempt of a court

14

order, the order must be definite, clear and specific, leaving no doubt or uncertainty in the mind of the party committing the alleged contempt of the prohibited conduct. *Lachat v. Hinchcliffe*, 769 A.2d 481, 488-89 (Pa. Super. 2001). A court order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant. *Id*. Here, the parties' October 24, 2006 Order of Support is silent as to Father's support obligation to pay private home health care costs and therefore, Father cannot be held liable for an obligation that is not expressly clear within said Order.

Fifth, Mother argues that this Court failed to remedy the issue of who was to serve as the child's personal representative under the insurance policy. Father testified that he had no problem with Mother being the personal representative and therefore, the parties stipulated and there was no issue upon which this Court had to rule. See (N.O.T., 3/11/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 82).

Sixth, Mother argues that this Court erred by allowing Father to claim the child as a dependent for tax purposes. Pursuant to the Superior Court's Order, Father was properly allowed to claim the dependency exemption since it is within the discretion of the trial court to allocate the exemption to a non-custodial parent. Pa.R.C.P. 1910.16-2(f) (2013); (Appeal from the Order entered March 31, 2010 in the Court of Common Pleas of Montgomery County Civil Division, 6/29/11, p. 11). Therefore, this Court was properly allowed to award the exemption to Father as the non-custodial parent.

Seventh, Mother argues that this Court erred by failing to assign Father an earning capacity since he voluntarily left a higher paying job to assume a lower paying job. To modify child support obligation based upon reduced income, a petitioner must first establish that the voluntary change in employment was not made for the purpose of avoiding a child support

15

obligation and that a reduction in support is warranted based on petitioner's efforts to mitigate any income loss. *Kersey v. Jefferson*, 791 A.2d 419 (Pa. Super. 2002). Further, a petitioner must also present evidence as to why he or she voluntarily left the prior employment and evidence as to why the acceptance of a lower paying job was necessary. *Id.* Here, Father testified that he was a nurse contractor from 2005 to September 2010. (N.O.T., 3/11/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 185). From September 2010 to the time of the protracted hearing, Father was a full-time employee with no health insurance benefits and no guarantee of consistent work hours. *Id.* at 192, 196, 197-98. Therefore, Father properly presented to this Court that his change in employment was not to avoid a child support obligation and that it was necessary to ensure consistent income and affordable health insurance for himself and the child. Father mitigated his income loss by securing a full-time position.

Further, Mother argues that Plaintiff's counsel failed to disclose evidence such as documents concerning income, documents, reports, and the names of witnesses in advance of trial. However, on February 21, 2013, Plaintiff's counsel filed a pre-trial statement which included the exhibits and witnesses expected to be used at the time of trial. Further, this Court denied Mother's petitions for discovery since the Court entered an order on January 5, 2010 which compelled Plaintiff to provide certain documents to Defendant before the parties' initial protracted hearing on February 2, 2010. *See* (N.O.T., 3/11/13, Support/Contempt/Custody/Sanctions/Special Relief, p.322, 324); (Order (2003-06071) *seq.*140). Therefore, because Plaintiff was already compelled by the Court to provide discovery requested by Defendant, this Court properly denied Defendant's motions requesting discovery.

Lastly, Mother argues this Court erred by making improper comments about God in violation of church and state. Improper remarks made by the trial judge during the course of the trial may be grounds for a new trial, if they are prejudicial to a party's case. *Bloom v. Hopman*, 98 A.2d 414 (Pa. Super. 1953). Here, any remarks made on the topic of religion did not prejudice Mother's case or her ability to present her case.

## A. THIS COURT DID NOT ERR BY PERMITTING THE RELEASE OF PSYCHIATRIC RECORDS PERTAINING TO THE PARTIES' SON J█████ D█████

On appeal, Mother asserts that this Court erred by releasing, through unfair surprise, information concerning Mother and the child. Pursuant to 42 CFR §2.2, records of identity, diagnosis, prognosis, or treatment of any patient may be disclosed without the written consent of the patient when authorized by an appropriate court order. 42 CFR §2.2 (b)(2)(C) (2013). Further, a court is required to weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure is necessary, shall impose appropriate safeguards against unauthorized disclosure. *Id.*

Here, this Court issued an order on March 6, 2013 which permitted the release of medical records pertaining to the parties' child, ███████████ from Foundations Behavioral Health. (Order (2003-06071) *seq.*307). This Order further directed that the child's records shall be confidential pursuant to 55 Pa.Code §5100.35, destroyed after litigation, and not to be disclosed to any third parties. This Court properly followed the mandates of 42 CFR §2.2 (b)(2)(C) by protecting the child's medical records. Said medical records were needed by this Court to adequately evaluate the child's medical condition and to properly determine the child's need for medically necessary supplies. Therefore, the need for disclosure to provide

17

medically necessary supplies for the child outweighed any injury that could have potentially resulted from disclosure.

## B. THIS COURT DID NOT RESTRICT MOTHER'S RIGHT TO EXAMINE, CROSS-EXAMINE, OR IMPEACH WITNESSES.

Here, Mother alleges that this Court restricted her right to examine, cross-examine, and impeach witnesses. The opportunity for cross-examination is a right and not a privilege. *Rich Hill Coal Co. v. Bashore*, 7 A.2d 302, 318 (Pa. 1939). However, the scope of cross-examination is within the sound discretion of the trial court and will not be disturbed unless there is an abuse of discretion. *Boucher v. Pennsylvania Hosp.*, 831 A.2d 623, 629 (Pa. Super 2003).

Mother also alleges the following: 1) that this Court restricted her right to testify as a witness, precluded her from producing evidence and exhibits, and admitted prejudicial testimony and exhibits, 2) that this Court denied her the ability to properly utilize exhibits to defend and make claims, 3) that this Court interfered with her right to and ability to make claims against and impeach Father, 4) that this Court allowed Plaintiff's counsel to testify even though she was not called as a witness, and 5) this Court failed to exclude prejudicial testimony and exhibits. Here, this Court did not restrict Mother's right to examine, cross-examine or impeach any witnesses and if Mother was, in any way, cut short of time, it was because she was a pro se defendant and tried to examine and/or impeach outside the scope of the issues and petitions before this Court. Further, Plaintiff's counsel, Deborah Zitomer, Esquire, did not provide testimony during the protracted hearing. Counsel simply clarified issues raised by Mother since Mother was pro se and could not provide this Court with a concise and direct procedural posture of the case. Lastly, this Court did not admit any prejudicial evidence since all evidence admitted by this Court during the protracted hearing

18

was both competent and relevant. *See Moroney v. General Motors Corp.*, 850 A.2d 629 (Pa. Super. 2004).

## C.    THIS COURT DID NOT ERR IN ITS JULY 30, 2013 SUPPORT ORDER.

First, Mother alleges that this Court erred by deducting the costs of Father's health insurance from his net income.

In cases in which the obligor is paying the cost of health insurance coverage and the obligee has no income or minimal income such that the obligor will bear 90% or more of the proportional share of the cost of the health insurance premiums, the trier of fact may, as fairness requires, deduct part or all of the costs of the premiums actually paid by the obligor to provide coverage for the other party or the children from the obligor's gross income to determine net income for support purposes. Pa.R.C.P. 1910.16-6(b)(4) (2013).

Pursuant to statute, this Court was authorized to deduct Father's health insurance premium payments from his gross income, which it did in its July 30, 2013 Support Order. This Court considered a deduction of the health insurance payments paid by Father fair since Father had the burden of providing 90% or more of the health insurance premiums for the child. For the period of January 1, 2007 through May 1, 2007, Father was responsible for 98% of the monthly support amount and for May 2, 2007 through December 31, 2007, Father was responsible for 92% of the monthly support amount. (Order (2003-06071) *seq.*328). Further, Father was responsible for 88% of the monthly support amount for the period of January 1, 2008 through December 31, 2008, 87% of the monthly support amount for the period of January 1, 2009 through December 31, 2009, 88% of the monthly support amount for the period of January 1, 2010 through February 15, 2011, and 87% of the monthly support amount for the period of February 16, 2011 and Forward. *Id.* Therefore, rounding up to the nearest percentage, Father was responsible for 90% of the health insurance premiums and this Court was proper in deducting Father's health insurance premiums from his gross income.

Second, Mother alleges that this Court erred by assigning her an earning capacity. In its July 30, 2013 Support Order, this Court held Mother to her actual earnings from February 23, 2006 through February 15, 2011 since Mother was employed at Phoenixville Hospital. However, this Court assigned Mother an earning capacity for the last support period of February 16, 2011 and forward since Mother voluntarily terminated her employment by failing to return to work after her 30 day leave of absence which ended on February 10, 2011. *See* Pa.R.C.P. 1910.16-2(d)(1); (N.O.T. March 7, 2013, Ex. P-6, Personnel Action Form dated March 23, 2009). This Court was generous in assigning Mother an earning capacity by averaging Mother's net monthly incomes from 2006 until 2010 which were rather low figures. By doing this, this Court factored in Mother's sacrifice of foregoing employment and staying at home to care for the child who suffers from developmental delays. However, under the Rules of Civil Procedure, this Court was required to hold Mother to her actual earnings for the period in which she worked and had the discretion to assign her an earning capacity based on willful failure to obtain employment after she was terminated from her job for failure to return after her Family Medical leave Act time was exhausted. There was also some discrepancy as to whether Mother failed to return to her job due to her own personal leave under the Family Medical Leave Act or for the child. *Id.* at 78. Therefore, Mother was held to her actual earnings for the time period of which she was still employed and assigned an earning capacity for her voluntary decision not to return to her employment.

Third, Mother argues that this Court erred by not holding Father accountable for payment of the child's home health care aides retained by Mother. This Court determined that Mother was not entitled to the cost of a private home health care aide since it was an unreasonable medical service expense under Pa.R.C.P.1910.16-6(c)(1). During the times

20

Mother was employed, Father's health insurance for the child covered a home health care aide while the cost of a private home health care aide, at 25 dollars per hour, outweighed Mother's income of approximately 12 dollars per hour. *See* (N.O.T., 3/4/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 38). Therefore, a private home health care aide while Mother was employed or unemployed was financially unreasonable. Lastly, Mother requested that Father pay the cost of a private home health care aide despite the fact that Mother's bills for the private home health care aide was discharged in bankruptcy. (N.O.T., 3/11/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 57-58). Therefore, this Court was proper in not awarding Mother the cost of a private home health aide.

Fourth, Mother argues that this Court failed to properly consider the impact of the child's disability and what was necessary to timely help him. Pursuant to Pa.R.C.P. 1910.16-5, this Court had the discretion to award a deviation from the amount of support based on the factors set forth in subsection (b). In its July 30, 2013 Support Order, this Court awarded the child with certain medically necessary supplies and applied a ten percent upward deviation onto Father's monthly support obligation. (Order (2003-06071) *seq*.328). Specifically, this Court awarded a custom Tracker bicycle in the amount of $2,206.00, sound blocking headphones in the amount of $300.00, heavy blanket in the amount of $99.00, Time Timer Wrist Timer in the amount of $55.00, a new iPad, survival case, and iTunes card in the amount of $640.00, a Sqwhistel in the amount of $21.00, and a Fidget Keeper in the amount of $7.00 for a total upward deviation of $333.00 based on testimony concerning the child's medical needs. *Id*; (N.O.T., 3/4/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 138); (N.O.T., 3/11/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 82); (N.O.T., 3/5/13, Support/Contempt/Custody/Sanctions/Special Relief, p. 102, 159, 171).

## CONCLUSION

Based on the foregoing analysis, this Court's July 30, 2013 Support Order should be

**AFFIRMED**.

**BY THE COURT,**

**GARRETT D. PAGE**       **J.**

Copy of the above Order sent to the following on
**By Interoffice:**
Court Administration
**By First-Class Mail:**
Deborah Zitomer, Esquire
Donna DeVitis, pro se

Judicial Secretary

22